*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA DEAN : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civ. Action No. 14-2211 |
| : | (FLW)(DEA) |
| NEW ENGLAND MUTUAL LIFE : | |
| INS. CO., : | OPINION |
| METROPOLITAN LIFE INS. CO. : | |
| t/a METLIFE, : | |
| ABC CORPS. 1-X, and : | |
| JOHN DOES 1-XX : | |
| : | |
| Defendants. : | |

**WOLFSON**, **United States District Judge**

This lawsuit, brought by plaintiff Linda Dean ("Plaintiff," or "Dean") concerns the payment of life insurance benefits to Plaintiff's daughters, rather than to Plaintiff, individually, or to Plaintiff as Trustee for her daughters. Presently before the Court is a motion to dismiss filed by defendants New England Mutual Life Insurance Company ("New England Mutual,") and Metropolitan Life Insurance Company ("Metropolitan") (collectively, "Defendants"). Plaintiff asserts the following causes of action against Defendants (1) in Count One, breach of contract to recover proceeds from the life insurance policy ("the Policy") for her own benefit; (2) in Count Two, breach of contract to recover the Policy's proceeds as Trustee for her daughters, (3) in Count Three, breach of the implied covenant of good faith and fair dealing; (4) in Count Four, misrepresentation and/or omission; (5) in Count Five, negligence; (6) in Count Six, consumer fraud pursuant to N.J.S.A. 56:-8 et seq.

For the reasons set forth below, Defendants' motion is granted. Counts One and Five are dismissed with prejudice; Counts Two, Three, Four, and Six are dismissed without prejudice.

## I. Background

The following allegations are taken from Dean's Amended Complaint and are accepted as true for the purposes of this motion to dismiss. Dean married Raymond P. Smalling ("Smalling") on April 24, 1991. Am. Compl. at 2, ¶ 6. Dean and Smalling had two children together: Ashley, born November 16, 1992, and Syndee, born August 25, 1994. *Id.* at 2, ¶ 10.

On or around June 28, 1991, New England Mutual Life Insurance Company issued an "ordinary life insurance policy under Policy #8665988, Preferred Class," to Smalling ("the Policy"). *Id.* at 2, ¶ 7. According to Dean, she was the beneficiary of the policy, and the policy's face value was $75,000. *Id.* at 2, ¶¶ 8, 9.

On July 29, 1998, Dean and Smalling divorced. *Id.* at 2, ¶ 11. According to Dean, Dean's attorney, John Stieger, "prepared a Property Settlement [Agreement ("PSA"),] reflecting the oral Stipulation of Settlement [between Dean and Smalling], which was placed on the record at the time of the divorce, which was then executed by the parties and returned to . . . Stieger, but . . . was not submitted to the court by . . . Stieger . . . with the Judgment of Divorce to be signed in and filed with the Court." *Id.* at 4, ¶ 10.

On or around March 3, 2003, Dean and Smalling entered into a Custody and Visitation Agreement ("CVA"), which, among other provisions, "provided for an agreement pertaining to the emancipation of the children." *Id.* at 5, ¶ 11. On or about May 17, 2006, the written Judgment of Divorce was signed by the court, incorporating the

PSA and "further providing that it did not merge but survive[s] the Judgment of Divorce. The Judgment further provides that any Orders between [Dean] and . . . Smalling subsequent to July 27, 1998 remain in full force and effect." *Id.* at 5, ¶ 12. According to Dean, the above provision means that the CVA remains in full force and effect. *Id.*

On or around July 16, 2013, Smalling died. *Id.* at 2, ¶ 12. At the time of Smalling's death, Ashley was 20 years of age and Syndee was 19. *See id.* at 2, ¶ 10.

Dean alleges that the Judgment includes a provision in the Policy stating the following: "The Husband shall maintain and pay the premium for insurance coverage to the amount of Seventy Five Thousand ($75,000) Dollars naming the children as equal beneficiaries and naming the Wife trustee until the children are emancipated." *Id.* at 5, ¶ 13.

> Dean further alleges that the CVA provides the terms of emancipation as follows,
>
> The children shall be deemed emancipated upon happening of any one of the following events:
>   a) The children reaching the age of eighteen (18) years. Attainment of the age of eighteen shall not be deemed an event of emancipation if the children are enrolled as full time students on a matriculated basis in any institution of secondary, post-secondary, or technical learning or anticipates entry into same within an (sic) one year.
>   b) The completion of the children's formal education, not including post graduate studies, on a matriculated basis, it being understood that so long as the children are diligently pursuing their formal education and obtaining passing grades, the children shall not be considered emancipated.
>   c) The completion of any school year of the children's education and failure to commence the next year of their education, or leaving school, unless such failure to continue on with their education has resulted from injury or illness or some other cause beyond the children's control.
>   d) The marriage of the children[.]
>   e) Entry into the military or armed forces by the children[.]
>   f) Paragraphs 2.8A through C notwithstanding, it is the parties' intention to emancipate the children upon their attaining their

3

> separate attainment of the age of 23. If either child is still in school upon reaching the age of 23, they shall not be deemed emancipated until the end of the current school year at the time they reach the age of 23.

*Id.* at 5–6, ¶ 14.

Dean alleges that Ashley and Syndee were not emancipated "in accordance with the . . . [Judgment] . . . and the Laws of the State of New Jersey" at the time of Smalling's death. *Id.* at 6, ¶ 15. Further, Dean alleges that "[a]t no time prior to the death of Raymond Smalling did either the Plaintiff or the Defendant petition the Court to emancipate the children of the marriage." *Id.* at 6, ¶ 17. Therefore, Dean alleges, "all legal obligations providing for payment of child support, custody and visitation and emancipation of the children were in full force and effect on the date of death of Raymond Smalling." *Id.* However, New England Mutual paid out Smalling's life insurance policy directly to Ashley and Syndee, instead of paying Dean "individually or as Trustee for the minor children pursuant to the . . . Judgment." *Id.* at 6, ¶ 19; *id.* at 11, ¶ 36.

On March 7, 2014, Dean filed a six-count Complaint in state court against New England Mutual and Metropolitan. On April 7, 2014, Defendants removed the case to this Court. Thereafter, Defendants moved to dismiss all counts of Plaintiff's Complaint against them.

## II. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)

4

(citation and quotations omitted). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court clarified the Rule 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips,* 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 555); *see also Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly'* s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. U PMC Shadyside,* 578 F.3d 203,

211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings ... [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied,* 132 S.Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id.* at 98. That said, the Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal,* 556 U.S. at 684).

**III.  Analysis**

    a.  N.J.S.A. 17B:24-5

Defendants first argue that Plaintiff's Complaint should be dismissed in its entirety because Plaintiff has alleged no facts that Defendants' payment was not made in good faith, and under New Jersey law, a good faith payment by a life or health insurer in accordance with the terms of the policy or contract fully discharges the insurer.

New Jersey law states,

> Whenever the proceeds of or payments under a life or health insurance policy or annuity contract heretofore or hereafter issued become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, payment thereof by the insurer in accordance therewith or in accordance with any written assignment thereof shall fully discharge the insurer from all claims under the policy or contract.

N.J.S.A. 17B:24-5. "N.J.S.A. 17B:24-5 fully protects the insurer when it pays the policy proceeds to the named beneficiary." *Vasconi v. Guardian Life Ins. Co. of Am.*, 124 N.J. 338, 348 (1991).

Defendants argue that they paid out Smalling's policy to Ashley and Syndee, who are named beneficiaries according to the Judgment of Divorce, based on the documentation the daughters provided to them and the presumption of emancipation that attaches when an individual reaches 18 years of age.[1] Hence, they argue, Dean's lawsuit is the type of "post-payment dispute" in which the New Jersey Supreme Court has stated Defendants should not be involved, "having properly executed [their] duty under the policy to pay the named beneficiary." *Id.*

While Defendants' argument is facially persuasive, it hinges upon facts to be more fully developed in discovery or provided in affidavits about what information was known to Defendants at the time they paid out the Policy to Ashley and Syndee;[2] it is therefore an argument more appropriately suited to a motion for summary judgment. *See, e.g.*, *Advanced Tubular Products, Inc. v. Solar Atmospheres, Inc.*, Civ. No. 03-0946, 2004 WL

---

[1] Defendants claim they did not know about the existence of the CVA until after Plaintiff filed this lawsuit. Defs.' Br. at 8.

[2] Defendants attached copies of the following documents as exhibits to their motion: (1) the claim form executed by Ashley Smalling; (2) the claim form executed by Sydnee Smalling; (3) the July 30, 2013 letter to the MetLife Defendants from Ashley and Sydnee Smalling; (4) the Judgment of Divorce, as received by Defendants from Ashley and Sydnee Smalling as an attachment to Ashley and Sydnee Smalling's July 30, 2013 letter; (5) the PSA, as received by Defendants from Ashley and Sydnee Smalling as an attachment to Ashley and Sydnee Smalling's July 30, 2013 letter; and (6) the CVA, as provided to Defendants by Plaintiff's counsel. Defendants argue that these documents should all be considered by the Court in analyzing their motion to dismiss.

Whether the Court may properly consider the documents offered as evidence by Defendants depends on whether they are integral to, or relied upon, in Plaintiff's claims. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that a district court may only use a "*document integral to or explicitly relied* upon in the complaint" without converting a motion to dismiss into a motion for summary judgment). In her Amended Complaint, Plaintiff cites to the Judgment of Divorce, the PSA, and the CVA to support her claims. Defendants' correspondence with Ashley and Syndee do not appear to be integral to or explicitly relied upon by Plaintiffs; accordingly, the Court will only consider Exhibits D, E, and F (coincidentally, Plaintiff attaches the same three documents to her opposition to Defendants' motion to dismiss) in the Court's analysis of Defendants' motion.

540019, at *3 (E.D. Pa. Mar. 12, 2004) *aff'd,* 149 F. App'x 81 (3d Cir. 2005). Accordingly, I decline to dismiss Plaintiff's entire Amended Complaint on the basis of Defendants' alleged payment in good faith.

    b. *Count One – Breach of Contract*

Defendants next claim that Plaintiff cannot state a claim for breach of contract in Count One because she has no claim to the Policy's proceeds for her own benefit. In Count One, Plaintiff alleges that "Pursuant to the terms on the policy . . . Defendants were to pay to the Plaintiff all sums due the Plaintiff pursuant to the terms of the policy . . . Defendant's [sic] have breached their duties and legal and contractual obligation by refusing the pay the Plaintiff and the amount due under the policy." Am. Compl. at 3, ¶¶ 2, 4.

To assert a breach of contract claim under New Jersey law, a plaintiff must plead "that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito,* 392 N.J. Super. 245, 265 (App. Div. 2007); *see also Bloch v. Xanau Liu*, Civ. No. 11-2055 SRC, 2011 WL 1547513, at *2 (D.N.J. Apr. 21, 2011).

Here, Defendants argue that Plaintiff cannot recover the Policy's proceeds for herself. In support of their position, Defendants point to N.J.S.A. 3B:3-14, which states,

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals . . . a divorce or annulment . . . revokes any revocable . . . dispositions . . . made by a divorced individual to his former spouse in a governing instrument . . ."

*Id. See also Hadfield v. Prudential Ins. Co.*, 408 N.J. Super. 48, 53 (App. Div. 2009), *cert denied*, 200 N.J. 472, (Oct. 01, 2009) (applying the revised statute, enacted in 2005, to a

marriage that ended before the revisions were enacted). Essentially, under *Hadfield*, a designation of a former spouse as beneficiary under a life insurance policy predating the divorce is deemed revoked, unless there is a governing instrument that expressly provides otherwise, regardless of whether the divorce occurred before N.J.S.A. 3B:3-14's enactment. *Id.*; *see also* N.J.S.A. 3B:3-14.

Plaintiff attempts to distinguish *Hadfield* by arguing that the marriage in *Hadfield* was of short duration and produced no children and that the parties disputed whether the decedent in that case had attempted to remove his former wife as a beneficiary prior to his death. Alternatively, Plaintiff argues that if N.J.S.A. 3B:3-14 applies, "the PSA provides for the Plaintiff to act as Trustee for the children until emancipation, and . . . as her former husband did not deem the children emancipated, it was irrelevant in which fashion the Plaintiff was to receive the proceeds, as it was not necessary to change the policy." Pl.'s. Opp. Br. at 10.

Plaintiff's attempts to distinguish *Hadfield* are unsuccessful. The court in *Hadfield* found that as a matter of law, N.J.S.A. 3B:3-14 applies to divorces predating the 2005 amendments to the statute and that "[j]ust as with a will, this life insurance policy allowed [the decedent to change the beneficiary at any time, and thus defendant . . . did not have a vested right to the policy proceeds. Because she has no vested right, . . .the amended N.J.S.A. 3B:3-14 applies to this life insurance policy." *Hadfied*, 48 N.J. Super. at 53. Here, Plaintiff and Smalling divorced in 1998, and though Smalling does not appear to have changed his designation of Plaintiff as his beneficiary on his life insurance policy, Plaintiff does not allege that any governing instruments expressly maintain Plaintiff as Smalling's beneficiary on the Policy; in fact, the Judgment of Divorce reveals

that Ashley and Syndee supplanted Plaintiff as co-beneficiaries. *See generally* Am. Compl. Accordingly, the Court finds that N.J.S.A. 3B:3-14 applies to Smalling's life insurance policy and to Plaintiff and Smalling's divorce in 1998.

Plaintiff's alternative argument that under the PSA, she is entitled to recover damages as Trustee is also unsuccessful, because she does not plead as such in Count One of her Amended Complaint. Rather, in Count One of her Amended Complaint, Plaintiff requests damages because Defendants failed to pay out the Policy's proceeds to her; she does not allege that she is due the Policy's proceeds to hold in trust for her daughters. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citation omitted).

Therefore, Plaintiff fails to state a claim for breach of contract in Count One of her Amended Complaint because she is not entitled to the Policy's proceeds for herself. Count One is dismissed.

   c. *Count Two – Breach of Contract*

Defendants next argue that Count Two of Plaintiff's Amended Complaint must be dismissed because Plaintiff has not pled facts sufficient to support her position that Ashley and Syndee were not emancipated. In Count Two, Plaintiff states that Ashley and Sydee "were not emancipated in accordance with the . . . Judgment of Divorce and the Laws of the State of New Jersey" and she claims that Defendants "failed and breached their duty to the insured by failing to properly investigate as to whom was appropriately entitled" to the Policy's proceeds and "breached their duties and legal and contractual obligation by refusing to pay the Plaintiff individually or as Trustee for the minor

children pursuant to the Plaintiff's Divorce Judgment the amount due" under the Policy. Am. Compl. at 6, ¶¶ 15, 17, 19.

As stated *supra*, the CVA lays out six conditions under which Ashley and Syndee would be considered emancipated. *See* Peterson Certif., Ex C at 5–6.  Plaintiff, however, has not specifically alleged that none of these conditions apply to either daughter, both of whom were over 18 years of age at the time of Smalling's death and thus, under the terms of the CVA, were presumed emancipated unless they were enrolled full-time in school or anticipated full-time entry into school within one year. *See id.* In the absence of pled facts, Plaintiff's allegation is merely a legal conclusion devoid of factual support,[3] which— coupled with her recital that Defendants breached their contractual duties by paying out the Policy's proceeds to her allegedly unemancipated children instead of to her as Trustee—is insufficient to withstand a motion to dismiss under the Rule 12(b)(6) standard. *Pearson v. Sec'y Dep't of Corr.*, No. 13-1412, --- F.3d ---, 2015 WL 74262, at *4 (3d Cir. Jan. 7, 2015) ("'[T]hreadbare recitals of the elements of a cause of action, supported by conclusory statements' are insufficient to survive a motion to dismiss.")

---

[3] In support of her position that her allegation that her children were unemancipated is well-pled, Plaintiff points to her allegation in Count Two that "[a]t no point in time prior to the death of Raymond Smalling did either the Plaintiff or the Defendant petition the Court to emancipate the children of the marriage. As such, all legal obligations providing for payment of child support, custody and visitation, and emancipation of the children were in full force and effect on the date of death of Raymond Smalling." Am. Compl. at 6, ¶ 16.

However, as Defendants point out, a court order formally emancipating Ashley and Syndee is not required, either within the terms of the CVA or under New Jersey law. *See generally* Peterson Certif., Ex. C; *see also Newburgh v. Arrigo*, 88 N.J. 529, 543 (1982) ("Emancipation can occur upon the child's marriage, induction into military service, by court order based on the child's best interests, or by attainment of an appropriate age. Although emancipation need not occur at any particular age, a rebuttable presumption against emancipation exists prior to attaining the age of majority, now 18."); *see also Rivera v. Rivera*, No. A-3028-12T1, 2014 WL 103213, at *3 (N.J. Super. Ct. App. Div. Jan. 13, 2014.

11

(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Therefore, Plaintiff's breach of contract cause of action in Count Two of her Amended Complaint is dismissed without prejudice.

  IV.  *Count Three – Implied Covenant of Good Faith and Fair Dealing*

Next, Defendants argue that Count Three of Plaintiff's Amended Complaint should be dismissed.

In Count Three, Plaintiff alleges that Defendants "breached the implied duty of good faith and fair dealing owed to Plaintiff by the mishandling of the claim, failing to process the claim properly, fail[ing] to pay the proper party, and advising the Plaintiff that the parties['] children were legally entitled to the proceeds and moreover misstating to the Plaintiff . . . the insurance policy proceeds." Am. Compl. at 7–8, ¶ 23.

Plaintiff has failed to state a claim under the implied covenant of good faith and fair dealing because she has failed to allege that Defendants acted in bad faith or with an improper motive. "Bad faith or ill motive is an essential element of a claim for breach of the implied covenant of good faith and fair dealing." *Coldwell Banker Real Estate, LLC v. Plummer & Associates, Inc.*, Civ. No. 09-1313SRC, 2009 WL 3230840, at *4 (D.N.J. Oct. 2, 2009); *see also Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 231 (2005) ("[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive."). In the insurance context, the New Jersey Supreme Court has held that "to establish a claim for bad faith in the insurance context, the plaintiff must show two elements: (1) the insured lacked a 'fairly dateable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim,"

12

*Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004); *see also Picket v. Lloyd's*, 131 N.J. 457 (1992).

Plaintiff has failed to allege any bad faith or improper motive at all in Count Three, let alone that Defendants lacked a "fairly debateable" reason for failing to pay out any of the Policy's proceeds to Plaintiff, either on her own behalf or as Trustee. *See* Am. Compl. at 7–8. Indeed, Plaintiff herself acknowledges that Defendants did not deny a claim and that they paid out the Policy's proceeds (and appeared to do so promptly) to the claimants, Plaintiff's daughters, upon their request for payment. Therefore, Count Three of Plaintiff's Amended Complaint will also be dismissed without prejudice for failure to state a claim.[4]

V.      *Count Four – Misrepresentation/Omission and Count Six – Consumer Fraud*

Next, Defendants argue that Counts Four and Six of Plaintiff's Amended Complaint, should be dismissed because Plaintiff has failed to plead with particularity under Rule 9(b).

In Count Four, Plaintiff appears to allege an intentional misrepresentation or omission cause of action.[5] Plaintiff alleges that Defendants "represented to Plaintiff, under the law,

---

[4] Defendants argue that Count Three should be dismissed because, under *Picket*, Defendants had a "fairly debatable" reason for paying out the Policy's proceeds to Ashley and Syndee. This argument, however, is one suited to inclusion in a motion for summary judgment, not a motion to dismiss—it requires the Court to make findings on facts not asserted in the Amended Complaint and properly included in affidavits or developed in discovery. *Compare* FED. R. CIV. P. 12(b) *with id.* 56; *see also Rehab. Inst. of N. Jersey, Inc. v. Home Depot Inc.*, Civ. No. 12-4035 SRC, 2012 WL 5944658, at *2 (D.N.J. Nov. 27, 2012) ("An argument that relies on proof of facts outside the Complaint cannot succeed on a motion to dismiss."). Therefore, the Court will not analyze Defendants' argument in this opinion.

[5] While Defendant argues under the assumption that Plaintiff asserted a negligent misrepresentation and/or omission cause of action, the allegations in the Amended Complaint suggest that Plaintiff has pleaded an intentional cause of action.

that the Plaintiff was not entitled payment [sic]. The Defendants, not by way of limitation, misled and deceived Plaintiff by advising Plaintiff that the parties['] children were legally entitled to the life insurance proceeds and moreover misstating to the Plaintiff the law of the State of New Jersey pertaining to the emancipation of children and their entitlement to the life insurance proceeds, with the intention that Plaintiff rely on this representation and not pursue a claim against Defendants." Am. Compl. at 8–9, ¶ 27. Further, Plaintiff alleges that Defendants "intended that the Plaintiff rely to her detriment on misrepresentation and/or omissions as described above, and not pursue any claim against the Defendants." *Id.* at 9, ¶ 28.

In Count Six, Plaintiff repeats her allegations in Count Four by alleging that Defendants "misled and deceived the Plaintiff by advising Plaintiff that the parties['] children were legally entitled to the life insurance proceeds and moreover misstating to the Plaintiff the Law of the State of New Jersey pertaining to the emancipation of children and their entitlement to the life insurance proceeds, with the intention that Plaintiff rely on this representation and not peruse a claim against the Defendants." Am. Compl. at 12, ¶ 42. Plaintiff further alleges that Defendants' conduct "constituted not by way of limitation unconscionable commercial practice, deception, false promise, and misrepresentation." *Id.*

"Independent of the standard applicable to Rule 12(b)(6) motions," Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened pleading standard for claims sounding in fraud or mistake. *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice,

intent, knowledge, and other conditions of a person's mind may be alleged generally."). The Third Circuit has adopted a flexible approach to evaluating whether a plaintiff's fraud claim meets Rule 9(b)'s heightened pleading standard. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984) ("Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud. . . . It is certainly true that allegations of 'date, place or time' [suffice], but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."); *see also Frederico,* 507 F.3d at 200 ("Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" (quoting *Lum v. Bank of America,* 361 F.3d 217, 223–24 (3d Cir. 2004)).

It appears clear that Plaintiff's claim in Count Four sounds in fraud, triggering Rule 9(b)'s heightened pleading requirements. *See, e.g.*, *Urban v. Comcast Corp.*, No. CIV.A. 08-773, 2008 WL 4739519, at *9 (E.D. Pa. Oct. 28, 2008) ("Although these claims do not employ the word "fraud," they can be read only as averments that defendants committed fraud, both by affirmative intentional misrepresentations and by intentional omissions."). As for Plaintiff's consumer fraud allegations in Count Six, it is well-established that most NJCFA claims must meet the heightened pleading requirements of Fed.R.Civ.P. 9(b). *See, e.g., Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007); *Arcand v. Brother Intern. Corp.,* 673 F.Supp.2d 282 (D.N.J. Nov. 30, 2009). However, courts have held that "[u]nconscionable commercial practice claims are distinct from NJCFA claims sounding in fraud, and so the heightened pleading standard of Rule 9(b)

15

does not apply" to the former set of claims. *Dewey v. Volkswagen AG*, 558 F.Supp. 2d 505, 525 (D.J.J. June 17, 2010). Plaintiff asserts that her allegations in Count Six amount to unsconcionable commercial practices, deception, false promise, and misrepresentation; thus, Plaintiff appears to assert both an unconscionable commercial practices NJCFA claim as well as one sounding in fraud. However, under either the Rule 8 or the Rule 9(b) pleading standards, Plaintiff's allegations in both Counts Four and Six fall short.

Here, Plaintiff injects no precision into her allegations in either Count Four or Count Six. She does not identify who made the alleged misrepresentations about the law to her, when the misrepresentations were made, how they were conveyed to her, what specifically was said to her, or any other information that would put Defendants on notice about the specific, complained-of conduct.[6] *See generally* Am. Compl.; *see also In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *Animal Sci. Products, Inc. v. China Nat. Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 878 (D.N.J. 2008). Accordingly, Counts Four and Six of Plaintiff's Amended Complaint must also be dismissed without prejudice for failure to state a claim.

VI.     *Count Five – Negligence*

Next, Defendants argue that Count Five of Plaintiff's Amended Complaint should be dismissed. In Count Five, Plaintiff alleges that Defendants were negligent in inappropriately paying the life insurance proceeds to Plaintiff's children "directly in violation of the Property Settlement Agreement and the Custody and Visitation

---

[6] Further, Plaintiff fails to plead any of the elements of an NJCFA claim: (1) unlawful conduct, (2) ascertainable loss, and (3) a causal connection between the unlawful conduct and the ascertainable loss. *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007); *see also Mason v. Coca-Cola Co.*, 774 F.Supp. 3d 699, 702 (D.N.J. 2011). Rather, Plaintiff merely claims that Defendants misstated the law to her in an (apparently unsuccessful) attempt to prevent Plaintiff from pursuing a claim against them. Am. Compl. at 12, ¶ 2.

Agreement." Am. Compl. at 10, ¶¶ 35–36. Specifically, Plaintiff avers that the insurance companies should have investigated the terms of these agreements and that their failure to do so negligently caused severe emotional distress to the Plaintiff. *Id.* ¶ 37. Furthermore, Plaintiff pleads that her "children's inappropriate expenditures of the life insurance proceeds has caused the Plaintiff extreme emotional distress." *Id.* ¶¶ 38–39.

Defendants argue that Plaintiff (1) is not owed a duty by the Defendants, and (2) was not in a zone of proximal danger entitling her to severe emotional distress damages.

Plaintiff appears to assert that Defendants' conduct amounted to negligent infliction of emotional distress ("NIED").[7] "Generally, . . . an individual can maintain an independent tort action for negligent infliction of emotional distress in two instances. A plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness. Alternatively, a plaintiff can state a prima facie claim for negligent infliction of emotional distress by satisfying the four elements set forth in *Portee*." *Jablonowska v. Suther*, 195 N.J. 91, 104 (2008) (internal citation omitted). In *Portee*, the New Jersey Supreme Court held that "[a] plaintiff now can maintain an independent cause of action for negligent infliction of emotional distress where (1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the

---

[7] While Plaintiff has only asserted "Negligence" as the title of her cause of action in Count Five, the allegations in Count Five, and her arguments in opposition to Defendants' motion to dismiss, suggest that Plaintiff intends to assert a negligent infliction of emotional distress claim against Defendants.

17

death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress." *Id.* (citing *Portee*, 84 N.J. 88, 97 (1980)).

Here, there are absolutely no facts to suggest that any of Defendants' alleged conduct (1) placed Plaintiff in reasonable fear of immediate personal injury that resulted in Plaintiff's severe emotional distress manifesting in bodily injury or sickness, or (2) meets any of the elements of the *Portee* test. Further, Plaintiff has not pled any of the elements of a negligence claim—i.e., that Defendants owed Plaintiff a duty of reasonable care, that they breached that duty, or that Plaintiff suffered injury as a result of that breach. *See* Am. Compl. at 10–11; *see also, e.g.*, *Hansen v. Eagle-Picher Lead Co.*, 8 N.J. 133, 139–140 (1951); *Billings v. TD Bank, NA*, Civ. No. 13-2969 JBS/KMW, 2013 3989572, at *2 (D.N.J. Aug. 1, 2013).

Moreover, under the negligence analysis, even assuming Plaintiff has pled the elements of such a claim, her alleged emotional distress would in no way be considered reasonably foreseeable. Courts have dismissed claims for negligence and NIED in far more egregious circumstances. *See, e.g.*, *Cole v. Laughrey Funeral Home*, 869 A.2d 457, 466 (N.J. Super. Ct. App. Div. 2005) (dismissing a NIED claim because it was not reasonably foreseeable that the plaintiff's exclusion from a private funeral viewing would cause severe emotional distress). *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1128 (N.J. 1989) (dismissing a NEID claim based on "the false report of [Plaintiff's] death" because "the injury is not sufficiently palpable, severe, or enduring to justify the imposition of liability."); *Major League Baseball Promotion Corp. v. Colour–Tex, Inc.*, 729 F.Supp. 1035, 1055 (D.N.J. 1990) (dismissing a NIED claim because it was not reasonably foreseeable that filing a trademark seizure action would cause severe shock or

18

fright). In short, Plaintiff's asserted cause of action in Count Five is utterly without merit and, indeed, frivolous—it must be dismissed.

### VII. Conclusion

Counts One and Five are dismissed with prejudice; Counts Two, Three, Four, and Six are dismissed without prejudice.

Date: January 29, 2015 /s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.